### GRAND TRUNK WESTERN RAILROAD COMPANY v CITY OF FENTON

Docket No. 89354. Argued January 8, 1992 (Calendar No. 2). Decided March 27, 1992.

Grand Trunk Western Railroad Company brought an action in the Genesee Circuit Court against the City of Fenton, seeking an injunction against enforcement of the city's ordinance that imposed a speed limit of twenty-five miles per hour on freight trains operating within the city limits. The railroad claimed that the ordinance is void under the Supremacy Clause, US Const, art VI, cl 2, because it is preëmpted by the Federal Railroad Safety Act and regulations enacted pursuant to it. The court, Earl E. Borradaile, J., granted summary disposition for the plaintiff, enjoining enforcement. The Court of Appeals, WEAVER, P.J., and GILLIS and CAVANAGH, JJ., affirmed in an opinion per curiam (Docket No. 116341). The city appeals.

In a unanimous opinion by Chief Justice CAVANAGH, the Supreme Court *held:*

The City of Fenton's speed-limit ordinance as applied to freight trains operating within city limits is preëmpted by federal law and void under the Supremacy Clause, US Const, art VI, cl 2.

1. State law may be preëmpted to the extent Congress specifies by statute, if Congress evidences an intent to occupy a given field, or to the extent state law actually conflicts with federal law. Congress generally intended the Federal Railroad Safety Act to preëmpt all state or local regulation of railroad safety except state laws or regulations covering subjects not addressed by regulations adopted by the Secretary of Transportation, or a more stringent state law or regulation eliminating or reducing an essentially local safety hazard that is not incompatible with a federal law or regulation and does not create an undue burden on interstate commerce.

2. The first exception does not apply in this case because 49 CFR 213 sets forth a detailed and comprehensive framework of

REFERENCES

Am Jur 2d, Railroads §§ 36, 367.
See the Index to Annotations under Pre-Emption; Railroads.

speed limits for freight and passenger trains. It is irrelevant to preëmption analysis whether a state law's objectives are similar to or different from the federal law's objectives; preëmption analysis turns on Congressional intent to preëmpt state law and on the nature of the federal regulations. The Secretary of Transportation has covered the subject matter sought to be addressed by the city's ordinance.

3. With regard to the local safety hazard exception, Fenton's ordinance is necessarily incompatible with the regulatory framework of 49 CFR 213. While it is possible for trains to obey both federal and local speed limits, the enforcement of the lower local limit would substantially interfere with the carefully wrought federal scheme. Authorizing such limits would raise the specter of a patchwork of conflicting local rules interfering with the uniformity and smooth operation of the federal regulatory framework.

4. In addition, consistent with the plain language of the Federal Railroad Safety Act and its legislative history, the exceptions at issue apply only to states, not local governments. 45 USC 434 expressly indicates Congress' intent to occupy the entire field of railroad safety regulation. The act's silence with regard to local regulatory authority is not itself the basis for concluding that local regulation is preëmpted; rather, that silence exists against the backdrop of statutory language otherwise generally preëmpting both state and local regulation. Because only state regulatory authority, under certain limited circumstances, is expressly exempted from the scope of the act's preëmption, it follows that local regulatory authority is preëmpted.

Affirmed.

184 Mich App 166; 457 NW2d 120 (1990) affirmed.

MUNICIPAL CORPORATIONS — RAILROADS — SPEED LIMITS — FEDERAL RAILROAD SAFETY ACT — PREËMPTION.

A speed-limit ordinance applied to freight trains operating within a city's limits is preëmpted by federal law and void under the Supremacy Clause (US Const, art VI, cl 2; 45 USC 421 et seq.; 49 CFR 213).

*Gregory A. Roberts* for the plaintiff.

*Douglas J. Callahan* for the defendant.

Amicus Curiae:

*Feiler, Joelson, Lakind & Rosenberg* (by *Michael H. Feiler*) for Michigan Municipal League.

CAVANAGH, C.J. We address in this case the validity of a municipal speed-limit ordinance applied to freight trains operating within city limits. We find the ordinance preëmpted by federal law, and we therefore affirm the judgment of the Court of Appeals.

## I. FACTS AND PROCEDURAL HISTORY

The relevant facts in this case are undisputed. The City of Fenton, a small community in Genesee County, is bisected by a major freight train line operated by the Grand Trunk Western Railroad Company. Approximately twenty-four trains pass through Fenton on this track each day, operating at speeds up to fifty miles per hour. Several automobile crossings exist within Fenton city limits. The busiest of these, the North Leroy Street crossing, is heavily traversed and has been the scene of a number of fatal accidents over the years.

On October 13, 1986, in response to the safety problems posed by the crossings and the perceived failure of Grand Trunk to address those problems adequately, Fenton passed an ordinance that imposed a speed limit of twenty-five miles per hour on freight trains operating within city limits. The ordinance provides that any violation "shall be considered a misdemeanor punishable by up to 90 days in jail and/or a fine of not to exceed $500.00," and that "[t]he person in immediate charge and control of a train and/or any railroad company or corporation, owning or operating any railroad in violation of the provisions of this ordinance may

be charged with the violation of the provisions of this ordinance."

On February 26, 1987, Grand Trunk filed a complaint in the Genesee Circuit Court, seeking an injunction against enforcement of Fenton's ordinance on the ground that the ordinance is void under the Supremacy Clause, US Const, art VI, cl 2, because it is preëmpted by the Federal Railroad Safety Act (FRSA), 45 USC 421 *et seq.,* and regulations enacted pursuant to it by the Secretary of Transportation.[1] On March 13, 1989, following a number of procedural complications not relevant here, the circuit court granted summary disposition for Grand Trunk, and the requested injunction was issued on April 6, 1989. The Court of Appeals affirmed in an opinion per curiam, 184 Mich App 166; 457 NW2d 120 (1990), and this Court granted leave to appeal, 437 Mich 1035 (1991).

## II. ANALYSIS

The general principles governing federal preëmption are well established:

> Our cases have established that state law is pre-empted under the Supremacy Clause, US Const, art VI, cl 2, in three circumstances. First, Congress can define explicitly the extent to which its enactments pre-empt state law. Pre-emption fundamentally is a question of congressional intent, and when Congress has made its intent known through explicit statutory language, the courts' task is an easy one.
>
> Second, in the absence of explicit statutory language, state law is pre-empted where it regulates

---

[1] Grand Trunk also alleged that the ordinance imposed an undue burden on interstate commerce in violation of US Const, art I, § 8, cl 3, but neither the circuit court nor the Court of Appeals addressed that issue, and we likewise find it unnecessary to do so.

conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a "scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it" . . . .

Finally, state law is pre-empted to the extent that it actually conflicts with federal law. [*English v General Electric Co,* 496 US 72, 78-79; 110 S Ct 2270; 110 L Ed 2d 65 (1990). Citations omitted.]

In this case, the Federal Railroad Safety Act provides a clear basis for applying the first form of preëmption noted above:

The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary [of Transportation] has adopted a rule, regulation, order, or standard covering the subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce. [45 USC 434.]

It is clear under this provision that Congress generally intended to preëmpt any and all state or local regulation of railroad safety, except for regulations authorized under either of the two exceptions set forth in the statute. See, e.g., *Donelon v New Orleans Terminal Co,* 474 F2d 1108, 1112 (CA 5, 1973). Fenton argues that both exceptions apply, and that either one is sufficient to validate its

ordinance. Grand Trunk makes several arguments against the application of either exception. First, it contends that both exceptions apply only to regulations adopted by a "State," and not regulations adopted by cities or other units of local government.[2] Furthermore, with regard to the first exception, Grand Trunk contends that the Secretary of Transportation has indeed "adopted a rule, regulation, order, or standard covering the subject matter" of Fenton's ordinance, namely the federal train-speed regulations embodied in 49 CFR 213. With regard to the second exception, Grand Trunk contends that the ordinance, even if directed toward an "essentially local safety hazard,"[3] is incompatible with the federal regulations and imposes an "undue burden on interstate commerce."[4]

We agree with Grand Trunk that the first exception cannot save Fenton's ordinance, in light of 49 CFR 213. This regulation sets forth a detailed and comprehensive framework of speed limits for freight and passenger trains. See, e.g., 49 CFR 213.9(a), and part 213, appendix A. Fenton contends, however, that these provisions only regulate speed in relation to track and roadbed conditions, with the primary goal of preventing derailments and without regard to the issue of crossing safety in congested urban areas, the primary concern of Fenton's ordinance.

This issue was recently addressed by the United States Court of Appeals for the Eleventh Circuit in

[2] In the alternative, Grand Trunk argues that cities like Fenton do not possess any delegated authority under Michigan law to regulate freight train speeds. The Court of Appeals did not reach this issue, however, and we likewise find it unnecessary to do so.

[3] It is unclear whether Grand Trunk concedes that the safety problems affecting Fenton's crossings constitute an "essentially local safety hazard" under § 434. As explained below, we are able to resolve this case in Grand Trunk's favor under the assumption that they do.

[4] As noted above, see n 1, we do not reach Grand Trunk's "undue burden" argument.

*Easterwood v CSX Transportation, Inc,* 933 F2d 1548 (CA 11, 1991). Presented by the appellant in that case with essentially the same argument presented here by Fenton, the court in *Easterwood* stated:

> [As] the Supreme Court held in *Florida Lime & Avocado Growers, Inc v Paul,* 373 US 132, 142; 83 S Ct 1210; 10 L Ed 2d 248 (1963), . . . it is irrelevant to pre-emption analysis whether the state law's objectives are similar to or different from the federal law's objectives. Pre-emption analysis turns on Congress' intent to pre-empt state law and on the nature of the federal regulations. The *Florida Lime & Avocado Growers* Court noted that a comparison of the similarities and divergences in the objectives of the federal and state regulations is simply a poor predictor of whether the federal regulations will pre-empt state law. *Id.* Moreover, [the appellant] does not point to any legislative history for the speed limits and therefore she asks us to guess at the motives behind the Secretary of [Transportation's actions]. Such guessing is inherently suspect. While [the appellant] assumes that the speed limits are designed to prevent derailments, it is equally valid to assume that the speed limits were set low enough that, in conjunction with adequate grade crossing signals and gates, the speed limits were intended to lessen the number of grade crossing accidents as well as lessen the chances of derailments. [933 F2d 1554.]

We find Judge Johnson's opinion in *Easterwood* to be soundly reasoned and persuasive, and we therefore conclude that the Secretary of Transportation has covered the subject matter sought to be addressed by Fenton's ordinance.

With regard to the "local safety hazard" exception of § 434, we conclude that, even assuming all other conditions were met, Fenton's ordinance is necessarily "incompatible with" the regulatory

framework of 49 CFR 213. The parties agree that the current speed limit under the federal regulations for freight trains passing through Fenton is fifty miles per hour, in contrast with the twenty-five-mile-per-hour limit imposed by the ordinance. While it is possible for trains to obey both the federal and local limits, it is clear that enforcement of the much lower local limit would substantially interfere with the carefully wrought federal scheme. It is undisputed that trains take many miles and a substantial amount of time to shift between substantially different speeds. Authorizing local speed limits like Fenton's would raise the specter of a patchwork of conflicting local rules interfering with the uniformity and smooth operation of the federal regulatory framework. As one federal district court has stated:

> Congress was concerned that the existence of fifty separate [railroad] regulatory systems in the fifty states would undermine safety. If so, separate regulation by every city, village, township, or hamlet along the mainline would undermine safety infinitely more. Separate municipal regulation of speed is so greatly at odds with the Congressional purpose of uniformity as to need no further argument. [*Consolidated Rail Corp v Smith*, 664 F Supp 1228, 1238 (ND Ind, 1987), accord *City of Covington v Chesapeake & O R Co*, 708 F Supp 806, 808-809 (ED Ky, 1989).]

Furthermore, we agree with Grand Trunk's argument that the § 434 exceptions apply, in any event, only to the states and not to local governments. This conclusion is consistent with the plain language of § 434 and its legislative history,[5] and is

---

[5] See H Rep No 91-1194, 91st Cong (2nd Sess), reprinted in 1970 US Code Cong & Admin News 4104, 4116-4117. This committee report refers consistently to a "State's" authority to regulate railroad safety

supported by a unanimous line of precedent in the lower federal courts. See *Donelon, supra,* 474 F2d 1112-1113; *CSX Transportation, Inc v City of Thorsby,* 741 F Supp 889, 891-892 (MD Ala, 1990); *Grand Trunk W R Co v Town of Merrillville,* 738 F Supp 1205, 1207 (ND Ind, 1989); *City of Covington v Chesapeake & O R Co, supra,* 708 F Supp 808-809; *CSX Transportation, Inc v City of Tullahoma,* 705 F Supp 385, 387-388 (ED Tenn, 1988); *Southern Pacific Transportation Co v Town of Baldwin,* 685 F Supp 601, 603-604 (WD La, 1987); *Chesapeake & O R Co v City of Bridgman,* 669 F Supp 823, 826 (WD Mich, 1987); *Consolidated Rail Corp v Smith, supra,* 664 F Supp 1237-1238; *Johnson v Southern R Co,* 654 F Supp 121, 124 (WD NC, 1987); *Sisk v Nat'l Railroad Passenger Corp,* 647 F Supp 861, 865 (D Kan, 1986).

The United States Supreme Court's recent decision in *Wisconsin Public Intervenor v Mortier,* 501 US —; 111 S Ct 2476; 115 L Ed 2d 532 (1991), does not compel a contrary conclusion. *Mortier* involved an entirely separate federal statutory scheme, the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 USC 136 *et seq.,* replete with its own complexities and peculiarities. While the issue in *Mortier* bears a superficial similarity to that presented here, in that the petitioner in *Mortier* claimed that the FIFRA authorized local regulation of pesticides on the basis of statutory language

under the exceptions to preëmption of § 434, and makes no mention of excepting local or municipal regulatory authority from the broad federal preëmption expressed by § 434. With regard to the second exception, the report states that "[s]ince these local hazards would not be Statewide in character, there is no intent to permit a State to establish Statewide standards superimposed on national standards covering the same subject matter." *Id.* at 4117. Because only a state, obviously, would have the power to contemplate "statewide standards" in the first place, this sentence offers further suggestive evidence that only states, not municipalities or other local governments, were envisioned by Congress as exercising the regulatory powers permitted under the § 434 exceptions.

expressly authorizing only a "State" to regulate pesticides under certain conditions, see 111 S Ct 2482, and 7 USC 136v, there is a crucial difference.

As the Court noted in *Mortier,* there was no claim that the FIFRA either expressly preëmpted local regulation of pesticide use or evinced a Congressional intent, apart from the statutory authorization to the states, to otherwise exclusively occupy that field. See 111 S Ct 2482-2483. Rather, the respondent's preëmption argument with regard to the statutory text[6] rested primarily on the express authorization of "State" regulatory authority, coupled with the statutory *silence* with regard to local regulatory authority. As the Court held in ruling for the petitioner, "[m]ere silence . . . cannot suffice to establish a 'clear and manifest purpose' to pre-empt local authority." 111 S Ct 2483 (citations omitted).

In this case, by contrast, § 434 expressly indicates Congress' intent to occupy the entire field of railroad safety regulation, subject only to the two exceptions set forth in § 434. Thus, § 434's silence with regard to local regulatory authority is not itself the basis for concluding that local regulation is preëmpted; rather, that silence exists against the backdrop of statutory language otherwise generally preëmpting both state *and* local regulation. Because only "State" regulatory authority, under certain limited circumstances, is expressly exempted from the scope of § 434's preëmption, it follows that local regulatory authority is not included in that exemption. Just as the statutory

---

[6] *Mortier* also involved arguments for preëmption on the basis of the legislative history of the FIFRA, see 111 S Ct 2484-2485; cf. 111 S Ct 2490 (Scalia, J., concurring in the judgment) (objecting that "we are a Government of laws not of committee reports"), but that is of no concern to us in this case because the FIFRA's legislative history obviously has no bearing on the FRSA. As we have already discussed, the FRSA's legislative history supports our analysis here. See n 5.

silence in *Mortier* was insufficient to establish preëmption in the first place, so the statutory silence here is insufficient to overcome the preëmption otherwise expressly mandated by the statute.

Furthermore, the Court in *Mortier* noted that other provisions of the FIFRA refer not only to the "States" but also to their "political subdivisions." See 111 S Ct 2483, and 7 USC 136f(b), 136t(b). As the Court stated, "[i]f the use of 'State' in FIFRA impliedly excludes subdivisions, it is unclear why the one provision would allow the designation of local officials for enforcement purposes while the other would prohibit local enforcement authority altogether." 111 S Ct 2483-2484. For these reasons, the Court's conclusion in *Mortier* that local governments remain free to regulate pesticides under the FIFRA does not conflict with our conclusion that local governments are barred from regulating railroad safety under § 434 of the FRSA.

For the foregoing reasons, and despite our sympathy for the genuine safety concerns that motivated the adoption of Fenton's train-speed ordinance,[7] we are compelled to find that ordinance preëmpted and void under the Supremacy Clause, US Const, art VI, cl 2.

We affirm the judgment of the Court of Appeals.

LEVIN, BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred with CAVANAGH, C.J.

[7] We note that municipalities like Fenton are not without remedies for these concerns; rather, they must simply pursue such remedies in coöperation with the state and federal Departments of Transportation, and in accordance with state and federal statutes and regulations.