Per Curiam.
 

 Plaintiff appeals from an order of the circuit court granting summary disposition to defendant. We reverse and remand for further proceedings.
 

 Plaintiff was injured while in the course of her employment by Cooperative Elevator Company. Specifically, she had climbed atop a grain car operated by defendant Huron & Eastern Railway Company, Inc., in order to open a lid or hatch of the car so that grain could be loaded. Plaintiff alleged that the lid was defective, causing her to expend an extraordinary amount of energy to lift it. Further, she alleged that the lid suddenly flew up and knocked her to the ground, causing her to sustain serious, disabling, and permanent injuries. Defendant denies that the hatch was defective.
 

 The trial court granted defendant’s motion for summary disposition, concluding that plaintiff’s claims
 
 *664
 
 under state law are preempted by the Federal Railroad Safety Act (frsa), 49 USC 20101
 
 et seq.
 
 We disagree.
 

 Plaintiff first argues that defendant’s duty under state law to properly inspect and maintain the hatch or lid on top of the grain car is excepted from preemption by the FRSA. We agree.
 

 Continued state regulation of railroads, with restrictions, is permitted under the frsa. Specifically, § 20106, 49 USC 20106, provides in part as follows:
 

 A State may adopt or continue in force a law, regulation, or order related to railroad safety until the Secretary of Transportation prescribes a regulation or issues an order covering the subject matter of the State requirement.
 

 In the case at bar, both sides concede that there are no federal regulations covering duties related to grain car hatches or lids. Therefore, we conclude that, under the express terms of § 20106, any state laws, regulations, or orders related to grain car hatches or lids remain in force until and unless the federal Secretary of Transportation adopts a regulation or issues an order regarding grain car hatches or lids.
 

 This interpretation is consistent with the United States Supreme Court’s holding in
 
 CSX Transportation, Inc v Easterwood,
 
 507 US 658; 113 S Ct 1732; 123 L Ed 2d 387 (1993). In Easterwood, the Court clarified that legal duties imposed by state common law fall within the scope of § 20106, addressing the question whether the Secretary of Transportation had issued regulations covering the same subject matter as state negligence law. The
 
 Easterwood
 
 Court out
 
 *665
 
 lined a specific approach to be used in these types of cases:
 

 To prevail on the claim that the regulations have preemptive effect, petitioner must establish more than that they “touch upon” or “relate to” that subject matter,... for “covering” is a more restrictive term which indicates that pre-emption will lie only if the federal regulations substantially subsume the subject matter of the relevant state law.
 
 [.Easterwood, supra
 
 at 664 (citation omitted).]
 

 The Supreme Court’s limited holding in
 
 Easterwood
 
 and the statute’s emphasis on the states’ reserved power are both reflective of the general presumption in the law against federal preemption. See
 
 Rice v Santa Fe Elevator Corp,
 
 331 US 218; 67 S Ct 1146; 91 L Ed 1447 (1947) (the historic powers of the states to regulate train safety must not be superseded unless it is the clear purpose of Congress). Federal preemption derives from the Supremacy Clause of the United States Constitution, US Const, art VI, cl 2,
 
 CSX Transportation, Inc v City of Plymouth, Michigan,
 
 86 F3d 626 (CA 6, 1996), and occurs only under certain conditions:
 

 “The Supremacy Clause of Art VI of the Constitution provides Congress with the power to pre-empt state law. Preemption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.”
 
 [Id.
 
 at 627, quoting
 
 Louisiana Public Service Comm v Federal Communications Comm,
 
 476 US
 

 
 *666
 
 355, 368-369; 106 S Ct 1890; 90 L Ed 2d 369 (1986) (citations omitted).]
 

 See also
 
 Grand Trunk W R Co v Fenton,
 
 439 Mich 240, 243-244; 482 NW2d 706 (1992).
 

 Defendant relies on
 
 Fenton
 
 in support of its position, but that reliance is misplaced.
 
 Fenton
 
 dealt with a challenge to a local speed limit ordinance that imposed a lower limit than that of the federal regulations. Thus,
 
 Fenton
 
 did not deal with an area that was unregulated by federal rules, such as hatches on grain cars, but with an area that is extensively regulated, speed limits.
 

 Fenton
 
 is an example of the second area of state regulation permitted under § 20106, which provides that states may
 

 adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety when the law, regulation, or order—
 

 (1) is necessary to eliminate or reduce an essentially local safety hazard;
 

 (2) is not incompatible with a law, regulation, or order of the United States Government; and
 

 (3) does not unreasonably burden interstate commerce.
 

 This is a separate provision from that referred to earlier in this opinion and does not apply to the case at bar. Indeed, the error in the trial court’s reasoning in this case is that it reviewed this matter under this second provision and not the first.
 

 The first saving provision allows for state regulation in areas not regulated under the FRSA, while the second allows for state regulation in limited circumstances, involving local safety hazards, where the area is covered by federal regulations. That is, the first covers state regulations in the absence of federal reg
 
 *667
 
 ulations, while the second covers local regulations more stringent than existing federal regulations. Because, as the parties agree, the federal government has not regulated grain car hatches, that means that the first provision, not the second, applies. Accordingly, the trial court erred in applying the second saving provision rather than the first.
 

 This interpretation is consistent with the Supreme Court’s holding in
 
 Easterwood, supra
 
 at 664, which clarified that “[l]egal duties imposed on railroads by the common law fall within the scope of” § 20106. In other words, state negligence law is counted among the laws, regulations, or orders that states may adopt or continue in force.
 

 Defendant also argues that a finding of preemption is supported by the fact that the Secretary of Transportation has issued regulations covering the subject area of plaintiff’s claims. Defendant cites 49 CFR 215.1, 215.11, 215.13, and 215.101
 
 et seq.,
 
 as support for this assertion. The regulation at 49 CFR 215.1 describes the scope of part 215: “This part prescribes minimum Federal safety standards for railroad freight cars.” Section 215.11 requires the designation of and states the qualifications for railroad freight car inspectors. 49 CFR 215.11. Section 215.13 requires that freight cars be inspected before the train departs, 49 CFR 215.13(a); that the inspection be performed by a designated inspector to determine whether the car is in compliance with part 215, 49 CFR 215.13(b); and that as a minimum, where an inspector is not on duty, an inspection be made “for those conditions set forth in appendix D” to part 215. 49 CFR 215.13(c). It also notes that “[performance of the inspection prescribed by this section does not relieve a railroad of
 
 *668
 
 its liability under § 215.7 for failure to comply with any other provision of this part.” 49 CFR 215.13(d). Section 215.101 prohibits railroads from placing or continuing in service freight cars that have “certain defective components.” 49 CFR 215.101. The components enumerated in §§ 215.103-215.129 include: the wheel, axle, plain bearing box, plain bearing, plain bearing wedge, roller bearing, roller bearing adapter, freight car truck, car body, couplers, uncoupling device, draft arrangement, and cushioning device. 49 CFR 215.103-215.129. None of the components listed are part of a grain car or grain car hatch or lid. See 49 CFR 215.101-215.129. Therefore, we conclude that, while some of these regulations “touch upon” or “relate to” the subject of freight car inspections and safety,
 
 Easterwood, supra
 
 at 664, none of them “substantially subsume the subject matter of the” state law claims that plaintiff has brought,
 
 id.,
 
 as did the speed limits that were held to be preempted in
 
 Easterwood.
 
 Furthermore, we note that 49 CFR 215.1, as quoted above, states that part 215 sets forth the
 
 minimum
 
 standards. We agree with plaintiff that this suggests that the federal regulations imply that there may be other, i.e., state, sources of applicable safety standards.
 

 In sum, part 215 not only anticipates other safety standards, but it also does not specifically deal with grain car hatches. Accordingly, we reject defendant’s argument that those regulations preempt plaintiff’s state claims.
 

 In sum, we agree with the Ohio Supreme Court’s decision in
 
 In re Miamisburg Train Derailment Litigation,
 
 68 Ohio St 3d 255, 260; 626 NE2d 85 (1994), wherein the Ohio court noted that some
 
 post-Eas
 
 
 *669
 

 terwood
 
 cases had interpreted § 20106 “as a narrow exception to a broad preemption of state regulation in rail safety matters” and “almost to the point of applying a presumption in favor of preemption whenever [§ 20106] is at issue.”
 
 Miamisburg, supra
 
 at 261, rejected this
 

 expansive interpretation of [§ 20106], at least insofar as the preemption of state common-law tort claims is at issue .... In spite of the fact that the railroad industry is heavily regulated,
 
 Easterwood
 
 underscores that the preemptive reach of [§ 20106] is not all-encompassing. Moreover,
 
 Easterwood
 
 establishes that a presumption
 
 against
 
 preemption is the appropriate point from which to begin an analysis of whether common-law tort claims are preempted: “In the interest of avoiding unintended encroachment on the authority of the States, however, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find pre-emption.”
 
 [Easterwood, swpra
 
 at 663-664.] There could be no better example of a subject which is “traditionally governed by state law” than a common-law tort claim.
 

 For these reasons, we conclude that the trial court erred in concluding that plaintiffs state claims were preempted by federal law. Accordingly, we reverse the trial court’s grant of summary disposition in favor of defendant.
 

 Inasmuch as we have concluded that plaintiff’s claims are not preempted by federal regulations, we need not separately address the arguments raised in plaintiff’s second issue, whether the trial court should have dismissed all plaintiff’s claims.
 

 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. Plaintiff may tax costs.