219 F.3d 1040 (9th Cir. 2000)
 PATRICK P. TOCHER, an individual, dba Pacific Coast Motoring, Plaintiff-Appellee,
v.
CITY OF SANTA ANA; PAUL WALTERS, Defendants-Appellants,
and
CITY OF TUSTIN; CITY OF COSTA MESA; SANTA ANA POLICE DEPARTMENT; W. DOUGLAS FRANKS; TUSTIN POLICE DEPARTMENT; COSTA MESA POLICE DEPARTMENT, Defendants.
PATRICK P. TOCHER, an individual, dba Pacific Coast Motoring, PlaintiffAppellee, v.
CITY OF SANTA ANA; PAUL WALTERS, Defendants.
SANTA ANA POLICE TOWING ASSOCIATION, Applicant in Intervention-Appellant.
 Nos. 97-55628, 97-55660
 
 Office of the Circuit Executive
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted July 14, 1999--Pasadena, California
Filed July 14, 2000
 [Copyrighted Material Omitted][Copyrighted Material Omitted]
 Benjamin Kaufman, Robert J. Wheeler, Deputy City Attorneys, Santa Ana, California, for the defendants-appellants.
 Michael P. McGovern, Ayres and Parkey, Knoxville, Tennessee, for the plaintiff-appellee.
 Mark S. Rosen, Santa Ana, California, for the intervenor-appellant.
 Appeals from the United States District Court for the Central District of California, Alicemarie H. Stotler, District Judge, Presiding; D.C. Nos. CV-95-00224-AHS, CV-95-00224-AHS
 Before: Melvin Brunetti, Pamela Ann Rymer, and Barry G. Silverman, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 Patrick Tocher ("Tocher"), the operator of a tow truck business in Santa Ana, California, filed this action against the City of Santa Ana ("City"), alleging that the city's ordinances regulating the automobile towing industry are preempted by 49 U.S.C. S 14501(c). The district court concluded that Santa Ana's tow truck ordinances were preempted by section 14501(c) and entered a judgment permanently enjoining the City of Santa Ana from enforcing any law related to the price, route, or services of towing businesses and/or individuals engaged in the tow truck business as either principals or employees. The City of Santa Ana and the Santa Ana Police Towing Association appeal from the district court's final judgment. We have jurisdiction under 28 U.S.C. S 1291, and we affirm in part and reverse in part.
 
 I.
 
 2
 The City enacted a set of municipal ordinances that regulate automobile towing operations and tow trucks. See Santa Ana Municipal Code ("SAMC"), S 32-81, et seq. The ordinances create a dual permit system that requires towing businesses and individual tow truck operators to obtain City permits and comply with certain City regulations. To operate a towing company, a person must, among other things, obtain a "towing operation" permit from the City, see SAMC S 3282, maintain approved storage facilities, see SAMC S 32-93, and keep certain business hours. See SAMCS 32-97. The ordinances also establish certain standards that regulate the interaction of towing companies and private individuals. For instance, towing companies must obtain written authorization before making consensual tows, see SAMCSS 32-93, notify the police of any non-consensual tows, see SAMC 32-94, provide itemized statements to people who authorize vehicle tows, see SAMC 32-95, and publicly display their rates and charges for towing services. See SAMC 32-98. To operate a tow truck in the City, a tow truck operator must obtain an operator's permit, which requires an applicant to pay a fee and provide the chief of police with information about the applicant's criminal and employment history. See SAMC SS 32-99 and 32-100.
 
 
 3
 The ordinances also authorize the chief of police to establish a rotational tow list for the Santa Ana Police Department that provides towing services for vehicle impoundment. See SAMC S 32-107. The Santa Ana chief of police has established a rotational tow list and that list is currently limited to eight towing companies that hold City-issued operation permits. Under the rotational tow list, the City dispatches the towing companies in turn whenever it needs a car impounded, but the owner of an impounded vehicle, not the City, pays for the towing services.
 
 
 4
 Tocher operates a towing business in Santa Ana. He and his employees have received citations from the City and have been threatened with legal action because they have failed to comply with the City ordinances regulating towing operationsand tow truck drivers. The City has demanded that Tocher and his employees obtain the required City permits before engaging in any further towing operations within the City. Tocher filed this lawsuit in federal district court in an attempt to prevent the City from enforcing its towing ordinances. Tocher alleged that the City's ordinances are preempted by the Federal Aviation Administration Authorization Act of 1995 ("FAAA"), Pub. L. No. 103-305, 108 Stat. 1605 (codified at 49 U.S.C. S 14501), as amended by the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), Pub. L. No. 104-88, 109 Stat. 899.
 
 
 5
 The district court granted Tocher a preliminary injunction and then conducted a non-testimonial bench trial based on stipulated facts in order to determine whether Tocher was entitled to permanent injunctive relief. After the bench trial, the district court granted judgment in favor of Tocher, concluding that the City's tow truck ordinances were preempted by federal law and enjoining the City from enforcing any law related to the price, route, or services of towing businesses and/or individuals engaged in the tow truck business as either principals or employees. Specifically, the district court enjoined the City of Santa Ana and its officials from enforcing any laws pursuant to Santa Ana Municipal Code sections 32-81 through 32-107. It also enjoined the further application of several provisions in the California Vehicle Code that regulate and grant cities the authority to regulate tow truck businesses. See Cal. Vehicle Code SS 21100(g), 22650, 22651.1, 22658(k), 22658(l)(1)-(l)(3), 22658.1, 22850.5.
 
 
 6
 After the district court entered judgment in favor of Tocher, the City filed a motion to amend the judgment and SAPTA filed a motion to intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure. The district court denied both motions. SAPTA and the City appeal from the district court's final judgment.
 
 II.
 
 7
 We review the district court's decision denying or granting a motion to intervene as of right de novo. See League of United Latin Am. Citizens v. Wilson, 131 F.3d 1297, 1302 (9th Cir. 1997); Cedar-Sinai Med. Ctr. v. Shalala, 125 F.3d 765, 768 (9th Cir. 1997).
 
 
 8
 SAPTA filed a motion in the district court to intervene as of right under Rule 24(a) after the district court entered its judgment in favor of Tocher and while the City's motion to amend the judgment was pending. The district court denied SAPTA's motion to intervene, concluding that SAPTA failed to demonstrate that its interests were inadequately represented by the City.
 
 
 9
 An applicant can intervene as of right under Rule 24(a) of the Federal Rules of Civil Procedure if (1) the motion to intervene is timely filed; (2) the applicant has a `significantly protectable' interest that is related to the property or transaction which is the subject of the action; (3) the applicant is situated so that the disposition of the action may, as a practical matter, impair or impede its ability to protect that interest; and (4) the applicant's interests are inadequately represented by the parties to the action. Californians for Safe and Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1189 (9th Cir. 1998), cert. denied, 119 S. Ct. 1377 (1999). To determine whether an applicant's motion to intervene is timely filed, we examine: "(1) the stage of the proceeding at which the applicant seeks to intervene; (2) the prejudice to the other parties; and (3) the reason for and length of the delay." United States ex rel. Killingsworth v. Northrop Corp., 25 F.3d 715, 719 (9th Cir. 1994).
 
 
 10
 Although SAPTA filed its motion after the district court entered its final judgment in favor of Tocher, SAPTA's motion was timely filed. A post-judgment motion to intervene is generally consideredtimely if it is filed before the time for filing an appeal has expired. See id. SAPTA filed its postjudgment motion to intervene while the City's motion to amend the judgment was pending. The motion was therefore timely since the time for filing an appeal had not yet expired.
 
 
 11
 In addition, Tocher was not prejudiced by SAPTA's postjudgment motion because SAPTA attempted to intervene before the litigation in the district court was complete and presented essentially the same legal arguments as the City. SAPTA also has a good reason for its late intervention because the district court's preliminary injunction did not affect the City's rotational tow list and because it only became apparent after the district court issued its final judgment that the City had failed to adequately represent SAPTA's interests.
 
 
 12
 Whether SAPTA satisfies the second, third, and fourth requirements of Rule 24(a) is controlled by Mendonca. In Mendonca, Californians for Safe and Competitive Dump Truck Transportation sued the California Department of Transportation, alleging that section 14501(c) preempted the California prevailing wage law. See Medonca, 152 F.3d at 1185. This Court concluded that the International Brotherhood of Teamsters satisfied the requirements of Rule 24(a) and had the right to intervene because: (1) the motion to intervene was timely filed; (2) the members of the Teamsters had a significant interest in receiving the prevailing wage that was the subject of the lawsuit; (3) a finding of preemption would impair the members' right to receive the prevailing wage; and (4) the California Department of Transportation could not adequately represent the narrow and parochial interests of the Teamsters. See id. at 1190.
 
 
 13
 Like the Teamsters in Mendonca , SAPTA satisfies the requirements of Rule 24(a) because: (1) its motion was timely filed; (2) its members have a significant interest in participating in the rotational tow list and the list is the subject of this litigation; (3) if Tocher prevails, the members of SAPTA will not be able to participate in the rotational tow list as it currently functions; and (4) the City might not adequately represent SAPTA's interests in preserving the rotational tow list. Because SAPTA satisfies the four requirements under Rule 24(a), the district court erred when it denied SAPTA's motion to intervene. We therefore reverse the district court's order and grant SAPTA's motion to intervene.
 
 III.
 
 14
 We review a district court's decision regarding federal preemption and the interpretation and construction of a federal statute de novo. See Mendonca, 152 F.3d at 1186 (9th Cir. 1998); Alexander v. Glickman, 139 F.3d 733, 735 (9th Cir. 1998); Waste Action Project v. Dawn Mining Corp. , 137 F.3d 1426, 1428 (9th Cir. 1998).
 
 
 15
 Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Art. VI, cl. 2. Issues of federal preemption arising under the Supremacy Clause, however, "start with the assumption that the historic police powers of the States [are] not to be superseded by . . . [a] Federal Act unless that [is] the clear and manifest purpose of Congress." Rice v. Santa Fe Elevator Corp. , 331 U.S. 218, 230 (1947). Congressional intent, therefore, is the" `ultimate touchstone' of preemption analysis." Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (quoting Malone v. White Motor Corp., 435 U.S. 497, 504 (1978)); see also Morales v. Trans World Airlines, Inc., 504 U.S. 374, 383 (1992).
 
 
 16
 Federal preemption occurs when: (1) Congress enacts a statute that explicitly preempts state law; (2) state law actually conflicts with federal law; or (3)federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. See Cipollone, 505 U.S. at 516. When, however, Congress adopts a statute that provides a reliable indication of Congressional intent regarding preemption, the scope of federal preemption is determined by the statute. See id. at 517. "Congress' enactment of a provision defining the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted." Id. Because Congress expressly adopted a preemption statute in the FAAA and that statute provides a reliable indication of Congressional intent, the preemption issue in this case must be resolved by determining whether the FAAA's preemption provision encompasses the City's ordinances regulating automobile towing operations.
 
 
 17
 In 1994, Congress enacted the FAAA in order to deregulate the motor carrier industry. To achieve the nationwide deregulation it desired, Congress included the following broad preemption statute in the FAAA:
 
 
 18
 (c) Motor carriers of property.--
 
 
 19
 (1) General rule.--Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of two or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier (other than a carrier affiliated with a direct air carrier covered by section 41713(b)(4)) or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.
 
 
 20
 (2) Matters not covered.--Paragraph (1)--
 
 
 21
 (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;
 
 
 22
 . . .
 
 
 23
 (C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.
 
 
 24
 (3) State standard transportation practices. --
 
 
 25
 (A) Continuation.--Paragraph (1) shall not affect any authority of a State, political subdivision of a State, or political authority of 2 or more States to enact or enforce a law, regulation, or other provision, with respect to the intrastate transportation of property by motor carriers, related to--
 
 
 26
 (i) uniform cargo liability rules,
 
 
 27
 (ii) uniform bills of lading or receipts for property being transported,
 
 
 28
 (iii) uniform cargo credit rules,
 
 
 29
 (iv) antitrust immunity for joint line rates or routes, classifications, mileage guides, and pooling, or (v) antitrust immunity for agent-van line operations (as set forth in section 13907),
 
 
 30
 . . .
 
 
 31
 49 U.S.C. S 14501(c).
 
 
 32
 Under 49 U.S.C. S 14501(c), a state or local law is preempted if: (1) the law is related to a price, route, or service of any motor carrier with respect to the transportationof property and (2) the law is not saved from preemption by one of the regulatory exceptions in sections 14501(c)(2) or (c)(3).
 
 A.
 
 33
 For a state or local law to be preempted by section 14501(c), that law must first be related to the price, route, or service of a motor carrier that transports property. A state or local regulation is related to the price, route, or service of a motor carrier if the regulation has more than an indirect, remote, or tenuous effect on the motor carrier's prices, routes, or services. See Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1188-89 (9th Cir. 1998). The ordinances in SAMC heavily regulate how towing companies operate their businesses. The comprehensive permit scheme, see SAMC SS 32-81 to 32-92; 32-99 to 32-100, prevents companies and tow truck drivers from entering the towing industry if they are unable to comply with the stringent guidelines governing the application and approval process. These requirements include, among others, the tender of valid proof of insurance to the chief of police, see id. S 32-91, and a yard for storing vehicles that is adjacent to the business location of the company. See id. S 32-92. Applicants may be denied a permit if they fail to comply with any provision in SAMC. Thus, the permit scheme erects barriers to entry and these barriers can affect competition for towing services in the City. See Medonca, 152 F.3d at 1189 (recognizing that a law would be preempted under section 14501(c)(1) if it "frustrates the purpose of deregulation by acutely interfering with the forces of competition"). The more applicants that are denied permits, the greater the effect on both the industry and its customers.
 
 
 34
 In addition, the ordinances regulating the operations of towing businesses, including restrictions on the rates charged for towing services, see id. S 32-98, advertising, see id., business hours, see id. S 32-97, and the various detailed requirements governing the transaction between a customer and a towing business, see id. SS 32-93 to 32-96, also directly affect the price, route, or service of a motor carrier. These operating requirements not only have the indirect effect of raising costs, but also directly influence the relationship between a customer and a towing business. Furthermore, the violation of any provision in SAMC can result in the revocation or suspension of a towing permit, thereby diminishing the number of towing businesses operating and further reducing the competition for towing services in the City. See SAMC SS 32-84 to 32-90. Indeed, the permit scheme and the provisions governing the conduct of towing operators have more than an indirect, tenuous, or remote effect on towing services and prices and are, therefore, expressly preempted by 49 U.S.C. S 14501(c)(1), unless an exception applies.
 
 
 35
 The California statutes enjoined by the district court also have more than an indirect, tenuous, or remote effect on the prices, routes, or services of a towing company. Sections 22651.1 and 22658(k) of the California Vehicle Code require towing companies to accept certain kinds of payment. Sections 22650, 22658(l), and 22658.1, regulate the removal of vehicles from private property. Finally, sections 21100(g) and 22850.5 grant local governments the authority to regulate towing businesses. These statutes, like the City's ordinances, regulate how a company provides towing services and are accordingly preempted absent the applicability of an exception. The conclusion that the City's ordinances and the California statutes are "related to a price, route or service of any motor carrier . . . with respect to transportation of property" is supported not only by the plain language of 49 U.S.C. S 14501(c)(1), but is also validated by the text of section 14501(c)(2)(C). Section 14501(c)(2)(C) exempts from preemption any laws "relating to the price of for-hire motor vehicle transportation by a towtruck, if such transportation is performed without [the] prior consent . . . of the owner."[1] By creating an exception for state or local regulation of the price of non-consensual towing services after the original preemption statute was enacted, Congress reiterated its intent to preempt all state or local laws regulating other aspects of towing services (related to prices, routes, or services) that are not subject to the exception. See R. Mayer of Atlanta, Inc. v. City of Atlanta, 158 F.3d 538, 543 (11th Cir. 1998); Harris County Wrecker Owners for Equal Opportunity v. City of Houston, 943 F. Supp. 711, 712 (S.D. Tex. 1996).
 
 
 36
 Our reading of section 14501(c)(1) is also closely aligned with the purpose and history behind the preemption statute. Section 14501(c) was adopted by Congress in order to deregulate the motor carrier industry. See Mayer , 158 F.3d at 546; Ace Auto Body & Towing, Ltd. v. City of New York, 171 F.3d 765, 772 (2d Cir. 1999). In passing the exception for regulation of nonconsensual towing codified in section 14501(c)(2)(C), Congress acknowledged that states and localities should only be permitted to regulate towing services under limited circumstances. See Mayer, 158 F.3d at 546. Congress recognized that widespread disparate regulation of the motor carrier industry was inefficient, increased costs, and reduced competition and innovation. See id. (quoting H.R. Conf. Rep. 103-677, at 87 (1994)). One House Conference Report stated: "The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business." See H.R. Conf. Rep. 103-677, at 87.
 
 
 37
 Allowing each state and local government to enact diverse laws regulating the towing industry would implicate the same evils that Congress was seeking to cure in enacting section 14501(c). Congress recognized that dispersing regulatory authority over motor carriers would require a towing company to adhere to a multitude of different regulatory schemes in every locality where it conducted business and virtually destroy any opportunity for companies to maintain national or even regional standards for conducting business. Therefore, a finding that towing businesses are expressly covered under section 14501(c)(1) also furthers the Congressional purpose of deregulating the motor carrier industry.
 
 
 38
 Finally, all three circuits that have considered the preemptive scope of section 14501(c)(1) have concluded that state or local laws regulating towing services are subject to that provision. See Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 691 (5th Cir. 1999) (recognizing that the regulation of towing companies falls under the express language of section 14501(c)(1), but that a rotational tow list is permissible under the market participant exception to preemption); Ace, 171 F.3d at 774 ("[T]he broad `related to' language of section 14501(c)(1) generally preempts economic regulation by the states within the field of intrastate towing."); Mayer, 158 F.3d at 543 ("[U]nder the plain, ordinary meaning of the terms used in S 14501(c)(1), the federal statute expressly preempts state and municipal ordinances that regulate prices, routes, or services provided by towing companies.").
 
 
 39
 In sum, the permit scheme and the provisions governing the conduct of towing operators in SAMC and the related provisions of the California Vehicle Code are preempted by the plain language of section 14501(c)(1), unless an exception applies.
 
 B.
 
 40
 The next issue is whether the rotational tow list, see SAMC S 32-107,falls under the general preemption rule in section 14501(c)(1). Although the plain language of the statute would appear to encompass a rotational tow list, it is saved from preemption by the municipal-proprietor exception (also called the market participant exception) to the preemption doctrine. See Dillingham Construction N.A., Inc. v. County of Sonoma, 190 F.3d 1034, 1037 (9th Cir. 1999); Shell Oil Co. v. City of Santa Monica, 830 F.2d 1052, 1062 (9th Cir. 1987). The key inquiry under the municipal-proprietor exception is whether the City is acting in a regulatory or proprietary capacity. See Shell Oil, 830 F.2d at 1062. In analyzing this exception, it is vital to examine the substance of the transaction because "a city may not use the guise of privity of contract to conduct otherwise forbidden regulatory activity." Id.
 
 
 41
 SAPTA argues that the rotational tow list is basically a contractual relationship between the City and member towing companies, thereby implicating the municipal-proprietor exception to preemption. SAMC section 32-107 authorizes the Santa Ana chief of police to create written rules and regulations governing the creation and maintenance of a rotational tow list. The purpose of the provision is "to provide a workable and comprehensive policy regarding the towing and/or storage of abandoned, disabled, stored or impounded vehicles from public or private property." See SAMC S 32-107. By its express terms, section 32-107 applies only to nonconsensual tows. The provision, therefore, governs only the relationship between the City and towing companies selected to the rotational tow list and was established in order to create a reliable list of towing companies who could render quick and efficient towing services for the City. Under these circumstances, the rotational tow list is the classic example of a municipality acting as a market participant; the City is merely establishing rules and regulations to guide the formation of contracts for towing services provided exclusively to the City. Unlike the permit guidelines and the regulations governing the operation of towing companies, section 32-107 in no way affects the relationship between towing companies and the general public. The limited scope of section 32-107, covering only contracts between the City and towing companies, is not a veiled attempt to regulate the motor carrier industry and is, therefore, not preempted by section 14501(c)(1).
 
 
 42
 This conclusion is consistent with the Fifth Circuit's opinion in Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686 (5th Cir. 1999). Cardinal Towing considered whether, during the bidding process for a contract to provide non-consensual towing services, a city's decision to require the satisfaction of certain requirements by the winning bidder was preempted by section 14501(c)(1). In concluding that it was not, the court stressed that the specifications listed in the municipal ordinance governed only the contract between the towing company and the municipality and had no effect on the general public. See id. at 694. The court recognized that the municipality was not doing anything other than "setting specifications that would insure the efficient performance of the contract with the City for City police tows." Id. In addition, as in this case, the court also noted that the contract specifications applied only to contracts for towing services -that is, a single job -and did not apply to the provision of other services such as those performed by a moving company. See id.
 
 
 43
 Although the ordinance in Cardinal Towing did not involve a rotational tow list because the municipality was seeking a single provider of towing services, the analysis is identical where, as here, multiple towing companies are being solicited to become part of a rotation system. Regardless of whether an ordinance encompasses a single company or several companies, any system that regulates the provision of towing services solely to a city, and affects only the relationship between a city and towing companies, fallsunder the municipal-proprietor exception that has repeatedly been applied in preemption cases.
 
 
 44
 Importantly, the Fifth Circuit also recognized in Cardinal Towing that application of the municipal-proprietor exception is consistent with the text of section 14501(c). The court first acknowledged that the text of section 14501(c)(1) is nearly identical to the text of 29 U.S.C. S 1144(a), the ERISA preemption statute. See id.; see also 29 U.S.C. S 1144(a) (preempting any state law "as they may nor or hereafter relate to any employee benefit plan"); 29 U.S.C. S 1144(c)(1) (defining a state law as "all laws, decisions, rules, regulations, or other State action having the effect of law."). Since courts "have had little difficulty finding that proprietary action does not `have the effect of law' under ERISA," the court in Cardinal Towing was persuaded that there was no logical reason for limiting the exception to cases arising under the NLRA or ERISA. See id. While conceding that no court had ever considered whether the municipal-proprietor exception applies to section 14501(c), the court nevertheless found that"[n]ot only does the text of the statute allow for a proprietary analysis, by excluding government actions without the force of law it seems to invite it." See id. at 695.
 
 
 45
 In addition, because section 14501(c) was uniquely designed to encourage the deregulation of the motor carrier industry, allowing a municipality to act as a private consumer of towing services is entirely consistent with that purpose. The creation of a rotational tow list allows a city to contract with the party who is able to deliver the most inexpensive, efficient, and reliable towing services by acting as any other private consumer would in a competitive market. See id. Therefore, under the municipal-proprietor exception, section 32-107 of SAMC is not preempted.
 
 
 46
 Section 32-107 of SAMC requires all members of the rotational tow list to hold towing operation permits and any failure to abide by the rules governing the rotational tow list can lead to the revocation or suspension of a permit. Since we have already concluded that the SAMC permit scheme is preempted, a requirement that a member of the rotational tow list hold a permit is similarly preempted. Because SAMC contains a severability clause, see SAMC S 1-5, however, and section 32-107 can function effectively despite partial invalidation, there is no need to strike down the rotational tow list in its entirety. See Edwards v. City of Santa Barbara, 150 F.3d 1213, 1217 (9th Cir. 1998); National Advertising Co. v. City of Orange, 861 F.2d 246, 250 (9th Cir. 1988). Rather, the City is free to continue using the rotational tow list, but cannot enforce any rules relating to permits.
 
 C.
 
 47
 As a final attempt to save the permit scheme and the guidelines governing the conduct and operations of towing businesses from preemption, see SAMC SS 32-81 to 32-106, the City argues that the exception contained in 49 U.S.C. S 14501(c)(2)(A) applies. That section provides that the general preemption provision in section 14501(c)(1)"shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . or the authority of a State to regulate motor carriers with regard to the minimum amounts of financial responsibility relating to insurance requirements and selfinsurance authorization." 49 U.S.C. S 14501(c)(2)(A) (emphasis added). The City argues that its ordinances are not preempted because they are safety regulations under section 14501(c)(2)(A) and they were enacted pursuant to an express delegation of the State's authority to municipalities across California. See Cal. Veh. Code S 21100. The City's argument fails because section 14501(c)(2)(A) only exempts safety regulations promulgated by state governments, not those enacted by municipalities.
 
 
 48
 As an initial matter, there is disagreement among federal courts about whetherstates may delegate their regulatory authority under the safety exception to municipalities, so there is not much uniform guidance on this issue. Compare R. Mayer, 158 F.3d at 545 to Ace, 171 F.3d at 774-75. The term "State" under the FAAA is defined as "the 50 States of the United States and the District of Columbia," see 49 U.S.C. S 545, and a plain reading of this provision indicates that municipalities are not included within that definition. In contrast to the general preemption provision and several of the exceptions, section 14501(c)(2)(A) only allows states to enact safety regulations. For example, the non-consensual towing exception, see 49 U.S.C. S 14501(c)(2)(C), expressly mentions that political subdivisions of states may regulate the prices charged for non-consensual towing services. Indeed, as Mayer points out, section 14501 contains no less than seven references to the regulatory authority of political subdivisions, but is conspicuously silent in section 14501(c)(2)(A). See Mayer, 158 F.3d at 545. "In fact, S 14501(c)(2)(A) is the only subsection of the statute that mentions the regulatory authority of a state without also mentioning the regulatory authority of the state's political subdivisions." Id. The most logical conclusion, therefore, is that this omission was intentional and that Congress did not intend to allow municipalities to escape preemption by enacting safety regulations. See Russello v. United States, 464 U.S. 16, 23 (1983) ("Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.").
 
 
 49
 There are two other reasons to adhere to a strict construction of section 14501(c)(2)(A). First, a strict reading furthers the policy of deregulation underlying the enactment of section 14501. Allowing both states and municipalities to escape preemption under the guise of regulating safety could lead to widespread, diverse regulation of motor carriers, precisely what Congress sought to avoid in promulgating a broad preemption statute. See Mayer, 158 F.3d at 546. Second, a contrary reading of the safety exception would lead to the absurd result that Congress can never preempt local regulations and simultaneously leave a state's ability to regulate intact. If this Court were to hold that a state can always delegate its responsibility to municipalities, Congress would always be required to preempt both state and local laws, or preempt neither. That result would violate fundamental principles of federalism and lead to a distorted interpretation of the Supremacy Clause.
 
 
 50
 In light of the plain language of section 14501(c)(2)(A) coupled with the Congressional purpose in enacting the preemption statute, we conclude that for section 14501(c)(2)(A) preemption purposes, a state may not delegate its regulatory authority to a municipality. Accordingly, the safety exception in section 14501(c)(2)(A) does not save the provisions of SAMC covered by the general preemption rule of section 14501(c)(1).
 
 
 51
 Section 14501(c)(2)(A), however, still excepts from preemption any regulations implicating the "safety regulatory authority of a State with respect to motor vehicles. " Sections 22650 and 22658.1 of the California Vehicle Code, governing the removal of vehicles from private property, escape preemption under this exception. Section 22650 prohibits a police officer (or any other unauthorized person) from removing any unattended vehicle without strict compliance with the Vehicle Code. Section 22658.1 requires a towing company to notify a property owner if it was necessary to cut, remove, or damage a fence in order to remove a vehicle. Each of these provisions is designed to make the towing and removal of vehicles safer by insuring that only professionals tow vehicles and that the removal does not endanger the general public or the owner of the property where the vehicle was removed. As a result, both statutes escape preemptionunder 49 U.S.C. S 14501(c)(2)(A). The other provisions in the California Vehicle Code that were enjoined by the district court, see supra, are preempted because they are based on consumer protection rather than safety, and the safety exception is therefore inapplicable.
 
 IV.
 
 52
 SAPTA's final contention on appeal is that Congress exceeded its authority under the Commerce Clause in promulgating 49 U.S.C. S 14501. Section 14501 preempts state or local regulation of motor carriers. This court has previously recognized that automobiles are instrumentalities of commerce even when used solely for intrastate purposes. See United States v. Randolph, 93 F.3d 656, 660 (9th Cir. 1996).[2] That view seems to be shared universally among federal courts. See, e.g., United States v. Cisneros, 203 F.3d 333, 340 n.4 (5th Cir. 2000) (cataloging federal case law on whether an automobile is an instrumentality of commerce). Because a motor carrier is defined under the FAAA as "a person providing motor vehicle transportation for compensation," see 49 U.S.C. S 13102(12) (emphasis added), section 14501 is within Congress' Commerce power because it regulates an instrumentality of commerce.
 
 V.
 
 53
 In sum, we make only the following modifications to the permanent injunction issued by the district court: (1) The City is free to continue its rotational tow list under the provisions of SAMC section 32-107, however, the underlying permit requirements are preempted and are not enforceable; and (2) Sections 22650 and 22658.1 of the California Vehicle Code may continue to be applied because they are not preempted. In addition, we reverse the district court's denial of SAPTA's motion to intervene.
 
 
 54
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. Each party shall bear their own costs.
 
 
 
 Notes:
 
 
 [1]
 This exception does not save SAMC because the permit scheme and the ordinances governing the operations of a towing business have an effect on the prices and services of both non-consensual and consensual tows.
 
 
 [2]
 Randolph's analysis regarding the Commerce Clause is still good law because the Supreme Court abrogated only Randolph's conclusions regarding the intent requirement under the federal carjacking statute. See United States v. Hicks, 103 F.3d 837, 848 (9th Cir. 1996).