OPINION
Plaintiff-appellant, City of Columbus, appeals the May 5, 2000 decision and judgment of the Franklin County Municipal Court, Environmental Division, dismissing criminal charges filed against defendant-appellee, James Garrett, for alleged violations of several Columbus City Code ("C.C.") Sections governing the width, length, and weight of motor vehicles operated on the city's highways, streets, bridges, and culverts. The trial court held that the applicable C.C. Sections 2139.04, 2139.05 and 2139.011 were preempted by relevant provisions of the Interstate Commerce Act ("ICA") governing state and local regulations of motor carriers transporting property. For the reasons that follow, we affirm the decision of the trial court.
On October 15, 1999, appellee was driving a tractor-semitrailer combination carrying a backhoe when he was stopped by a Columbus police officer and cited with violating several C.C. Sections related to overweight and oversized vehicles. Specifically, appellee was charged with four violations: (1) driving a vehicle that was too wide (C.C. Section 2139.05); (2) driving a vehicle that was too long (C.C. Section 2139.05); (3) driving a vehicle that was too heavy (C.C. Section 2139.04); and (4) driving an oversized and overweight vehicle without proper escort (C.C. Section 2139.011).
Appellee moved that the charges be dismissed on the ground that the applicable city ordinances were preempted by the ICA, in particular, Section 14501(c), Title 49, U.S. Code ("Section 14501[c]"), which provides as follows:
 (1) General rule. — Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier * * * with respect to the transportation of property.[1]
 (2) Matters not covered. — Paragraph (1) —
 (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;
 (B) does not apply to the transportation of household goods; and
 (C) does not apply to the authority of a State or a political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle. [Emphasis added.]
On May 5, 2000, the trial court granted appellee's motion finding that Section 14501(C) deprived the city of Columbus its authority to enforce the applicable city code sections. Appellant timely appeals, raising the following three assignments of error:
 1. The Court below erred when it determined that the general federal preemption statute regarding motor carriers, 49 U.S.C. § 14501(c), applies to Columbus' oversize vehicle ordinances when those ordinances do not regulate motor carriers.
 2. The Court below erred when it applied the general federal preemption statute applicable to motor carriers, 49 U.S.C. § 14501(c), to Columbus' oversize vehicle ordinances, rather than the federal statute specific to local oversize vehicle regulations.
 3. If the Court below correctly determined that 49 U.S.C. § 14501(c) applies to Columbus' oversize vehicle ordinances, it erred in determining that the exemption in that statute for State safety and truck-size regulations does not encompass Columbus' ordinances.
In its first assignment of error, appellant contends that the trial court erred in holding that the general preemption language of Section 14501(c)(1) applies to the city code sections at issue in this case. In particular, appellant contends that the city code sections are not preempted because they do not purport to regulate the "price, route, or service of any motor carrier." Rather, according to appellant, the code sections are general, safety regulations applicable to all motorists in the city and, as such, are not triggered by whether or not appellee was a motor carrier or not. Appellant argues that the city code sections are akin to any local traffic regulation, which Congress clearly did not intend to be preempted by the federal legislation. We do not find appellant's contentions persuasive.
Preemption under Section 14501(c)(1) is not limited to local regulations specifically targeted to motor carriers per se, but will also bar enforcement of any generally applicable local law that has a connection with or reference to the price, route, or service or a motor carrier that transports property. See Morales v. Trans World Airlines,Inc. (1992), 504 U.S. 374. In Morales, the United States Supreme Court addressed the scope of a preemption provision nearly identical to that at issue here and contained in the federal Airline Deregulation Act of 1978 (the "ADA"). In particular, the Supreme Court held that enforcement of state guidelines on airline fare advertising through a state's general consumer protection law was preempted by the ADA's preemption provision prohibiting the enforcement of state laws "relating to rates, routes, or services of any air carrier." Id. at 383; see Section 1305(a)(1), Title 49, U.S.Code.
In so holding, the Morales court specifically rejected the same argument raised by appellant here, i.e., that the statute only preempted local laws specifically addressed to the airline industry but did not preempt laws of general applicability. Id. at 386. As the court noted, such an argument ignores the sweeping "relating to" language of the statute and creates an irrational loophole to the federal scheme. Id.
The court further distinguished between those generally applicable state laws that indirectly, but materially affect rates, routes, or services (such as those found preempted in the case) and those whose effect was too tenuous, remote, or peripheral to be preempted. Id. at 390.
The Supreme Court's reasoning in Morales is equally applicable to the preemption provision contained in Section 14501(c)(1) at issue here. As such, a state or local regulation of general applicability will be deemed related to the "price, route, or service of a motor carrier" and, therefore, preempted by Section 14501(c)(1), if it has more than a remote or tenuous effect on the motor carrier's prices, routes, or services. Cf. Californians for Safe Competitive Dump Truck Transp. v. Mendonca
(C.A.9, 1998), 152 F.3d 1184 (holding that Section 14501[c][1] did not bar application of California's prevailing wage law to motor carriers because the law's effect on prices, routes, and services was remote and tenuous).
Here, appellant's oversized and overweight vehicle regulations applicable in this case operate as a direct effect on the services provided by motor carriers in the city of Columbus. The city code sections specifically limit the use of certain vehicles within the city limits unless certain permits are obtained and certain signage and escorts are used. Moreover, unlike other generally applicable traffic regulations throughout the city (i.e., traffic signs and speed limits), the regulations at issue here affect only large vehicles, i.e., those typically being used by motor carriers.
Finally, we are persuaded that the exception contained in Section 1401(C)(2)(A) for state safety regulations of motor vehicles (including route controls and limitations based on the size or weight of the motor vehicle) clearly indicates that Congress intended the general preemption provision of Section 14501(c)(1) to apply to the types of local regulations at issue here. There would be no need for the exception specifically authorizing states to regulate vehicles' size and weight if such regulations were not otherwise prohibited by the general preemption provision in Section 14501(c)(1).
As such, we find that the trial court did not err in finding that the relevant Columbus City Code sections fell within the general preemption provision of Section 14501(c)(1), Title 49, U.S.Code. Appellant's first assignment of error is not well-taken.
In its second assignment of error, appellant contends that the trial court erred in applying Section 14501(c) instead of relevant provisions of the Surface Transportation Assistance Act of 1982 ("STAA"), as amended and codified in Section 31101, Title 49, U.S. Code et seq. The STAA is a federal statutory scheme that regulates truck size and weight on the interstate highway system and generally preempts state laws that are inconsistent with the federal limitations. According to appellant, whether federal law preempts local oversize and overweight regulations depends on the specific provisions of the STAA and not the general preemption provision of Section 14501(c). We disagree.
Through passage of the STAA, Congress sought to establish uniform regulations concerning the weight, length, and configuration of trucks used in interstate commerce. See, generally, New Hampshire MotorTransport Assoc. v. Town of Plaistow (C.A.1, 1995), 67 F.3d 326, 329;National Freight, Inc. v. Larson (C.A.3, 1985), 760 F.2d 499, 506-507; Annotation: Federal Regulation of Tractor-Trailer Configuration under the Surface Transportation Assistance Act of 1982 (49 U.S.C.S Appx §§ 2301 et seq.) (1986), 77 A.L.R.Fed. 350. In so doing, the STAA contains two basic preemption provisions. One generally preempts states from enacting or enforcing certain limitations on the size of vehicles that can use the interstate highway system. See Section 31111, Title 49, U.S. Code (length limitations); Section 31113, Title 49, U.S. Code (width limitations). The other preempts states from enacting or enforcing laws denying a commercial motor vehicle "reasonable access" between the interstate highway system and "terminals, facilities for food, fuel, repair and rest, and points of loading and unloading." Section 3114(a), Title 49, U.S.Code.
Nothing, however, in the language of the STAA suggests that compliance with its provisions otherwise exempts state or local regulations of oversized and overweight vehicles from the general preemption provision for laws related to the price, route, or service of motor carriers found in Section 14501(c)(1). Again, the specific exception contained in Section 14501(c)(1) for state size and weight limitations clearly indicates that Congress recognized that Section 14501(c)(1) would otherwise apply to such regulations. Likewise, while the STAA specifically allows state or local governments to impose reasonable restrictions on the use of tandem truck combinations (i.e., those involving multiple trailers) on non-interstate highways, see Section 31114(b), Title 49, U.S. Code, neither this provision of the STAA, nor the provisions of the Columbus City Code related to tandem vehicles, is implicated by this case.
As such, we find that the issue of whether the city code sections regulating overweight and oversize vehicles at issue in this case are preempted by federal law is determined by reference to both the STAA and the provisions of Section 14501(c). Appellant's second assignment of error is not well-taken.
In its third assignment of error, appellant contends that, even if Section 14501(c)(1) is applicable to the city code sections at issue here, the trial court erred in determining that the exception contained in Section 14501(c)(2)(A) for state regulation of the size and weight of motor vehicles does not also encompass local, municipal regulations, especially those enacted through state delegation of authority. Again, we disagree, finding that appellant's argument is inconsistent with the language of Section 14501(c) and the public policy objections underlying the federal statute.
In so finding, we are persuaded by the following reasoning of the United States Court of Appeals for the Eleventh Circuit in R. Mayer ofAtlanta, Inc. v. City of Atlanta (C.A.11, 1998), 158 F.2d 538, which rejected this very argument in a challenge brought against local regulations governing consensual towing:
 * * * First, the argument ignores the presumption that, when Congress omits certain language in a particular subsection of a statute and includes the language in other subsections, the omission is intentional rather than accidental. See BFP v. Resolution Trust Corp., 511 U.S. 531, 537, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556
(1994) ("[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.") (internal quotation marks omitted). The statute at issue here presents a particularly appropriate opportunity to apply this interpretive rule, as § 14501 contains no fewer than seven express references to the regulatory authority of the political subdivisions of the states in its other subsections, §§ 14501(a), 14501(b), 14501(c)(1), 14501(c)(2)(C), 14501(c)(3)(A), 14501(c)(3)(B), and 14501(c)(3)(C), but omits any references to political subdivisions in § 14501(c)(2)(A).
 In fact, § 14501(c)(2)(A) is the only subsection of the statute that mentions the regulatory authority of a state without also mentioning the regulatory authority of the state's political subdivisions. We find it unlikely that this omission reflects a drafting error, because a similar preemption provision contained in the Airline Deregulation Act, 49 U.S.C. § 41713(b)(4)(B)(I), contains the same omission. For these reasons, we view Congress' omission of a reference to a state's political subdivisions from § 14501(c)(2)(A) as a manifestation of Congress' intent that municipal safety and insurance regulations are not exempted from the preemptive scope of § 14501(c)(1).
 Second, this interpretation is consistent with the policy objectives underlying the ICCTA. As stated above, the ICCTA is the product of Congress' desire to foster increased competition in the motor transportation industry. To achieve this end, Congress identified a need to eliminate a tangled web of state and local ordinances that regulated the transportation of property * * *:
 * * * By withholding the authority to enact safety and insurance regulations from political subdivisions, Congress ensured that counties and municipalities would not enact differing (and perhaps inconsistent) sets of safety and insurance ordinances. Stated differently, it is reasonable to assume that Congress decided that safety and insurance ordinances must be enacted on a statewide level, in order to minimize the disturbance to the motor transportation industry that a patchwork of local ordinances inevitably would create. [Emphasis sic., Id. at 545-546].
Other cases are in accord. See Tocher v. City of Santa Ana (C.A.9, 2000), 219 F.3d 1040, 1051 ("[i]n light of the plain language of section 14501[c][2][A] coupled with the Congressional purpose in enacting the preemption statute, we conclude that for section 14501[c][2][A] preemption purposes, a state may not delegate its regulatory authority to a municipality"); but, see, Ace Auto Body Towing, Ltd. v. The City of NewYork (C.A.2, 1999), 171 F.3d 765, 776 (holding that Section 14501[c][2][A] did not limit the authority of a state to delegate its regulatory authority to local or municipal governments). Appellant's third assignment of error is not well-taken.
For the foregoing reasons, appellant's three assignments of error are overruled, and the judgment of the Franklin County Municipal Court, Environmental Division, is affirmed.
 ____________ LAZARUS, J.
BOWMAN and DESHLER, JJ., concur.
[1] A "motor carrier" is defined as "a person providing motor vehicle transportation for compensation." Section 13102(12), Title 49, U.S.Code. The parties have stipulated that appellee was operating as a motor carrier on the day in question.