**CALIFORNIA DUMP TRUCK OWNERS ASSOCIATION, et. al., Plaintiffs,**

v.

**Gray DAVIS, et. al., Defendants.**

**No. CIV. S–01–517 FCDDAD.**

United States District Court, E.D. California.

Oct. 30, 2001.

Edward J. Hegarty, Hegarty Law Office, Georgetown, CA, Michael P. Mc-

Govern, Ayres & Parkey, Attorneys, Knoxville, TN, for Plaintiffs.

Bill Lockyer, Attorney General of the State of California, Pamela Smith–Steward, Chief Assistant Attorney General, Maual M. Medeiros, Senior Assistant Attorney General, Kenneth R. Williams, Supervising Deputy Attorney General, Jill Bowers, Deputy Attorney General, Sacramento, CA, for Defendants.

## MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiffs California Dump Truck Owners Association and Southern California Contractors Association (collectively referred to as "Plaintiffs") brought an action against Defendants Gray Davis, in his official capacity as Governor of California, and Bill Lockyer, in his official capacity as Attorney General of California (collectively referred to as "Defendants"). Specifically, Plaintiffs seek a declaratory order pursuant to 28 U.S.C. § 2201 that certain provisions of the California Code which authorize municipalities to enact regulations related to motor carriers of property are preempted by the Federal Aviation Administration Authorization Act ("FAAA Act"). This matter is before the court on cross-motions for judgments on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The questions before this court are whether the specified provisions of the California Code are saved from preemption by the FAAA Act and if the California statutory provisions are not saved from preemption, whether the FAAA Act is unconstitutional. This court must also decide whether necessary parties are absent from the case. For the reasons set forth below, this court answers all questions negatively. Therefore, Defendants' motion for judgment on the pleadings is denied while Plaintiffs' motion is granted.

## BACKGROUND

Plaintiff California Dump Truck Owners Association, a California non-profit corporation, is a state-wide trade organization whose members include approximately 1,500 dump trucking and construction trucking companies located throughout California. Plaintiff Southern California Contractors Association, a California non-profit corporation, is a trade organization representing 300 businesses in 12 southern California counties. Its members include general engineering and building contractors, and their affiliated companies, whose business operations include hauling equipment, goods, and supplies.

Plaintiffs allege that certain provisions of the California Code authorize political subdivisions of the state (e.g. local governments of counties and cities) to enact laws related to the price, route, or service of any motor carrier.[1] For example, California Vehicle Code § 21101(c) provides that a city or county may prohibit the use of particular highways by certain vehicles. Plaintiffs allege that municipalities have enacted local ordinances pursuant to the challenged California statutes relating to regulation of motor carriers. For example, a San Diego local ordinance restricts approximately five miles of Gopher Can-yon Road to truck traffic under seven tons. Plaintiffs contend that the California Code provisions which authorize local motor carrier ordinances are preempted by the FAAA Act. Section 601(c) of the FAAA Act, now codified at 49 U.S.C. § 14501(c) provides, in pertinent part, "... a State, political subdivision of a State, or political authority of 2 or more States may ·not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier ... with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

However, the FAAA Act expressly provides that certain matters are not the subject of preemption,[2] including motor carrier safety regulations issued by a State. *See* 49 U.S.C. § 14501(c)(2)(A). Plaintiffs concede that the subject matter of the challenged California statutes falls within the motor carrier safety regulations exception. Nevertheless, Plaintiffs argue that this exception for safety regulations does not apply to the challenged California statutory provisions because the motor carrier safety regulation exception applies only to laws issued by the *state* of California, not regulations and laws issued by the local governments.[3]

---

1. The specific statutes being challenged are the California Government Code § 37101(a); California Vehicle Code §§ 21100(b), 21101(c), 35100(c), 35401(d), 35401(e), 35404, 35700, 35701, 35707, 35712, 35715, 35717, 35753(a); and California Streets and Highways Code §§ 942 and 942.5.

2. The FAAA Act provides that the preemption paragraph:

 (A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization;

 (B) does not apply to the transportation of household goods; and

 (C) does not apply to the authority of a State or political subdivision of a State to enact or enforce a law, regulation, or other provision relating to the price of for-hire motor vehicle transportation by a tow truck, if such transportation is performed without the prior consent or authorization of the owner or operator of the motor vehicle.

 49 U.S.C. § 14501(c)(2).

3. Plaintiffs concede that local ordinances related to non-consensual towing services are not subject to preemption by the FAAA Act.

Defendants argue that local governments are included within the safety regulation exception. The Defendants further argue that to construe the FAAA Act, as plaintiffs do, to exclude local governments from the safety regulation exception would be unconstitutional and violate the Tenth Amendment and principles of federalism. The Defendants also allege that under the Plaintiffs' theory, necessary parties are absent since local governments have not been made parties to this case.

### STANDARD

 The standard governing a Rule 12(c) motion for judgment on the pleadings is basically the same as that which governs Rule 12(b) motions. The motion should be granted if, accepting as true all material allegations contained in the nonmoving party's pleadings, the moving party is entitled to judgment as a matter of law. *See Hal Roach Studios v. Richard Feiner & Co., Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1989).

### ANALYSIS

Neither Plaintiffs nor Defendants appear to dispute that the FAAA Act would preempt the challenged provisions of the California Code absent the safety regulation exception. Plaintiffs also concede that were the state of California to enact safety regulations related to motor carriers, those safety regulations would be expressly saved from preemption. The question before this court is whether the safety regulation exception applies to provisions of the California Code which authorize local ordinances related to motor carriers.

#### 1. Applicability of the FAAA Act's safety regulation exception

In determining whether the safety regulation exception is applicable to California Code provisions authorizing local ordinances, this court is guided by the express provisions of the FAAA Act, the Act's

legislative history, and the decisions of several circuits, including the Ninth Circuit, which have considered the issue.

#### A. Preemptive effect of the FAAA Act

 Preemption analysis "starts with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947). Congress manifests its intent to preempt state law in three ways: (1) enacting a statute that explicitly preempts state law; (2) where state law conflicts with federal law; and (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field. *See Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992).

The FAAA Act expressly provides that neither a state nor a political subdivision of a state may enact a regulation related to the price, route, or service of any motor carrier of property. *See* 49 U.S.C. § 14501(c)(1). It is clear that Congress intended to preempt state law on this subject. However, the FAAA Act preserves the "safety regulatory authority" of a state with respect to motor carriers of property and saves regulations issued by a state under that authority from the preemptive effect of the Act. *See* 49 U.S.C. § 14501(c)(2)(A).

#### B. Application of safety regulation exception to local ordinances

Several circuits, including the Ninth Circuit, have examined whether the FAAA Act's safety regulation exception extends to local ordinances. *See Stucky v. City of San Antonio,* 260 F.3d 424 (5th Cir.2001);

*Petrey v. City of Toledo,* 246 F.3d 548 (6th Cir.2001); *Tocher v. City of Santa Ana,* 219 F.3d 1040 (9th Cir.2000); *Ace Auto Body & Towing, Ltd. v. City of New York,* 171 F.3d 765 (2nd Cir.1999); and *R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538 (11th Cir.1998). All of these cases involved challenges brought by towing services companies to local or city ordinances regulating the tow truck industry in which the plaintiffs alleged that the local ordinances were preempted by the FAAA Act. In each of these cases, the cities argued that their local ordinances were expressly saved from preemption by the Act through the safety regulation exception. The Eleventh, Ninth, Sixth, and Fifth Circuits found that the safety regulation exception did not extend to local ordinances while the Second Circuit found that it did.

In *Tocher,* the Ninth Circuit based its decision that the safety regulation did not extend to municipalities on three reasons. First, the court looked to the text of the statute. The court found that the term "state" under the FAAA Act is defined as "the 50 States of the United States and the District of Columbia," *see* 49 U.S.C. § 545, and "a plain reading of this provision indicates that municipalities are not included within that definition." *Tocher,* 219 F.3d at 1051. The court also pointed to the fact that in contrast to the general preemption provisions of section 14501 and several of the exceptions, section 14501(c)(2)(A) only specifically mentions states as having the power to enact safety regulations. *See id.* For example, the non-consensual towing exception specifically states that political subdivisions of states may regulate prices of non-consensual tow services. *See* 49 U.S.C. § 14501(c)(2)(C). The *Tocher* court stated:

> ... section 14501 contains no less than seven references to the regulatory authority of political subdivisions, but is conspicuously silent in section 14501(c)(2)(A) ... "In fact,

§ 14501(c)(2)(A) is the only subsection of the statute that mentions the regulatory authority of a state without also mentioning the regulatory authority the state's political subdivisions."

*Id.* (quoting *R. Mayer of Atlanta, Inc. v. City of Atlanta,* 158 F.3d 538, 545 (1998)). The court concluded that "[t]he most logical conclusion, therefore, is that this omission was intentional and that Congress did not intend to allow municipalities to escape preemption by enacting safety regulations." *Tocher,* 219 F.3d at 1051.

Second, the court in *Tocher* found that a plain-meaning reading of the statute furthered the policy objective of deregulation which underlies section 14501. According to the conference report accompanying the FAAA Act, this statute was enacted in order provide a level playing field between air carriers of property and motor carriers of property. *See* H.R. Conf. Rep. No. 103–677 at 82, 85 (1994) *reprinted in* 1994 U.S.C.C.A.N. 1715, 1754, 1757. The conference report found that:

> ... preemption legislation is in the public interest as well as necessary to facilitate interstate commerce. State economic regulation of motor carrier operations causes significant inefficiencies, increased costs, reduction of competition, inhibition of innovation and technology and curtails the expansion of markets ... The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of doing business.

*Id.* at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759. The Ninth Circuit in *Tocher* found that given this policy objective of deregulation, "[a]llowing both states and municipalities to escape preemption under the guise of regulating safety could lead to widespread, diverse regulation of motor carriers, precisely what Congress sought

to avoid in promulgating a broad preemption statute." *Tocher,* 219 F.3d at 1051.

Finally, the court in *Tocher* found that a contrary reading of the safety regulation exception would lead "to the absurd result that Congress can never preempt local regulations and simultaneously leave a state's ability to regulate intact" and that this result "would violate fundamental principles of federalism and lead to a distorted interpretation of the Supremacy Clause." *Id.*

In contrast, the Second Circuit in *Ace Auto* found that the safety regulation exception did extend to municipal ordinances. First, the court found that the legislative history of the FAAA Act "indicate[d] that state safety regulatory authority (including, presumably, the authority to delegate) was to be 'unaffected' by the preemption statute." *Ace Auto,* 171 F.3d at 775. Second, the court found that Congress' deregulatory purpose was ambiguous as to scope and this lead the court to "hesitate to construe the text of § 14501 so as to frustrate unnecessarily the ability of municipalities to respond to the local safety concerns created by local towing industries." *Id.* at 776. Finally, the Second Circuit pointed to the fact that the U.S. Department of Transportation has taken to the position that the safety regulation exception applies to both state and local regulations. *See id.*

### C. Applicability of the safety regulation exception to the instant case

■ *Tocher* is controlling. The FAAA Act's safety regulation exception does not extend to local ordinances. By logical extension, the safety regulation exception also does not extend to California Code provisions which authorize local ordinances. To the extent that the challenged statutory provisions authorize local ordinances that do not fall within one of the other exceptions outlined sections

14501(c)(2)(B) and (C) (exceptions for household goods and regulation of prices of non-consensual towing services, respectively), the challenged provisions of the California Code are preempted by section 14501(c)(1) and are not exempted from preemption by the safety regulation exception in section 14501(c)(2)(A).

Moreover, this court finds the logic of the Ninth, Eleventh, Fifth, and Sixth Circuits persuasive. This court finds most compelling the fact that the safety regulation exception in section 14501(c)(2)(A) specifically does not mention "political subdivision of a state" while the other provisions of section 14501 do. This plain-meaning reading of the text of the statute coupled with Congress' avowed statutory purpose of deregulation make a strong case that the safety regulation exception is to be limited to the states.

However, Defendants argue that the safety regulation exception should apply to local ordinances and by extension, to the challenged California statutory provisions which authorize those local ordinances. Defendants contend that the FAAA Act's legislative history shows Congress' intent not to intrude on a state's legislative prerogatives in the spheres of highway safety regulatory authority. In addition, the Defendants argue that as a matter of California law, municipalities exercise direct state authority under California's highways and streets safety regulatory authority.

This court is not persuaded. While the legislative history of the Act evinces Congress' intent not to intrude on state authority with regards to motor carrier safety regulations, it is silent as to whether Congress meant to define states to include municipalities. In contrast, Congress conspicuously used the phrase "political subdivision of a state" in other provisions of section 14501 but did not use that phrase in section 14501(c)(2)(A). In addition,

since the legislative history shows that the purpose of the Act was to deregulate motor carriers so as to put them on an equal footing with air carriers, a reading of the Act which does not include local ordinances in the safety regulation exception would be more likely to further that purpose since it would decrease the likelihood that motor carriers would be subject to burdensome local regulation. As for Defendants' argument that local governments exercise direct legislative authority from the state as a matter of California law, even assuming that Defendants' contention is correct, how California interprets the nature of legislative power exercised by local governments is irrelevant in determining whether Congress intended to include local ordinances in the safety regulation exception.

## 2. Constitutionality of the FAAA Act

■ Defendants argue that the safety regulation exception should be read as applying to local ordinances because a contrary construction would render the Act unconstitutional because it would violate the principles of federalism and the Tenth Amendment. Defendants say that Plaintiffs' construction of the Act would result in the state of California needing to enact laws in support of a federal regulatory scheme and potentially spending millions of dollars to increase the width and load-bearing capacities of intrastate highways and streets. Defendants refer to the "anti-commandeering" principles enunciated by the Supreme Court in *New York v. United States*, 505 U.S. 144, 112 S.Ct. 2408, 120 L.Ed.2d 120 (1992) and *Printz v. United States*, 521 U.S. 898, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997).

In *New York*, the Supreme Court found that the "take title" provision of the Low-Level Radioactive Waste Policy Act violated the Tenth Amendment because it made states choose between two impermissible alternatives—legislate according to Congress' directive or take title to radioactive waste and face potential liability. *New York*, 505 U.S. at 175, 112 S.Ct. at 2428. The court found that "[e]ither type of federal action would 'commandeer' state governments into the service of federal regulatory purposes, and would for this reason by inconsistent with the Constitution's division of authority between federal and state governments." *Id.* In *Printz*, the Court found that state law enforcement officials could not be directed to conduct background checks pursuant to the Brady Handgun Violence Prevention Act. *Printz*, 521 U.S. at 899, 117 S.Ct. at 2365. The Court found that the balance of power between states the federal government would be impermissibly upset if the federal government "were able to impress into its service ... the police officers of the 50 States." *Id.* at 922, 117 S.Ct. at 2378.

The instant case is easily distinguishable from *New York* and *Printz*. Unlike *New York* and *Printz*, there is no federal regulatory scheme being imposed on the state of California by the FAAA Act. In *New York* and *Printz*, Congress told states or state officials *what to do*. In this case, through the FAAA Act, Congress is telling states *what not to do*, subject to certain exceptions. The Act does not mandate that the state of California or any other state enact any particular kind of motor carrier regulation.

In *Kelley v. United States*, 69 F.3d 1503 (10th Cir.1995), Plaintiffs claimed that the FAAA violated the Tenth Amendment because "it does not give the states a choice between regulating in a fashion consistent with federal regulation of motor carriers or having their state regulatory scheme preempted by a federal regulatory scheme, but instead compels the states not to regulate at all." *Id.* at 1509. The Tenth Circuit rejected plaintiffs arguments and stated, "it is clear that Con-

gress has not compelled the states to voluntarily act by enacting or administering a federal regulatory program. Rather, Congress has simply imposed rules on the states via its Supremacy Clause powers." *Id.* at 1510. This court reiterates the Tenth Circuit's finding that states are not being pressed into federal service by the FAAA Act.

### 3. Absence of Necessary Parties

■ Finally, Defendants argue that necessary parties are absent and, thus, are entitled to judgment on the pleadings. The Defendants contend that the governments of the municipalities of the state of California need to be made parties to this action. However, in this case, Plaintiffs are not challenging local ordinances. They are challenging certain state statutes. Therefore, it is not necessary for local governments to be made parties to this action.

### CONCLUSION

This court finds that, to the extent that the challenged provisions of the California Code authorize local ordinances regulating motor carriers of property that do not fall within one of the other exceptions outlined sections 14501(c)(2)(B) and (C), the challenged provisions are preempted by section 14501(c)(1) and are not exempted from preemption by section 14501(c)(2)(A). This court further finds that this construction of section 14501(c) does not render it unconstitutional. Finally, this court finds that necessary parties are not absent from this case. Therefore, Defendants' motion for judgment on the pleadings is DENIED and Plaintiffs' motion for judgment on the pleadings is GRANTED.

IT IS SO ORDERED.